PEOPLE v SPEARMAN

PEOPLE v RUSH

Docket Nos. 130745, 131895. Submitted July 15, 1992, at Detroit. Decided August 4, 1992, at 9:15 A.M. Leave to appeal sought

Following a joint trial in the Recorder's Court for the City of Detroit, Donnie A. Spearman was convicted by the court, Gershwin A. Drain, J., of aiding and abetting second-degree murder, and Dedrea Rush was convicted by a jury of second-degree murder, assault with intent to rob while armed, and possession of a firearm during the commission of a felony. The defendants were minors when the crimes occurred but were tried and sentenced as adults. Both appealed, and the appeals were consolidated.

The Court of Appeals *held:*

1. The trial court properly used the intent to rob the victim to satisfy the mens rea requirement for Spearman's conviction of aiding and abetting second-degree murder. The evidence, especially Spearman's confession, was sufficient to support a finding beyond a reasonable doubt that he acted with wilful and wanton disregard of the possibility that death or great bodily harm would result from the planned robbery.

2. The trial court properly relied on Spearman's confession to find that he acted with malice.

3. The court erred in relying on Rush's confession to determine Spearman's role in the robbery. The confession was admitted only against Rush, who was tried by a jury, and its use against Spearman was improper. The evidence was not so overwhelming that it can be said that the error was harmless beyond a reasonable doubt. Spearman's conviction must be vacated and the case remanded for reconsideration in light of the evidence properly admitted against Spearman.

4. Spearman did not overcome the presumption that his

REFERENCES

Am Jur 2d, Criminal Law §§ 167, 338, 351; Evidence §§ 526, 530, 1142; Homicide §§ 4, 10, 27, 28, 35, 263, 269, 283-285, 461; Juvenile Courts and Delinquent and Dependent Children §§ 16, 29, 34.

See the Index to Annotations under Confessions and Admissions; Corpus Delicti; Criminal Law; Homicide; Juvenile Courts and Deliquent Children.

sentence for aiding and abetting second-degree murder, which was within the minimum sentence range recommended by the sentencing guidelines, was proportional.

5. The trial court did not have jurisdiction to try Rush on the felony-firearm charge because it did not conduct a pretrial waiver hearing with regard to that charge. The automatic waiver statute, MCL 600.606; MSA 27A.606, grants circuit and recorder's courts jurisdiction to try a juvenile defendant for certain enumerated life felonies without conducting a waiver hearing, but does not grant the court ancillary jurisdiction to try the juvenile for nonenumerated nonlife felonies such as felony-firearm. Rush's felony-firearm conviction and sentence must be reversed.

6. The requirement of MCL 764.27; MSA 28.886 that a child under seventeen years of age must be taken immediately before the juvenile division of the probate court when arrested does not apply in automatic waiver cases under MCL 600.606; MSA 27A.606. Therefore, the trial court did not clearly err in refusing to suppress Rush's confession, which was made within two hours of his arrest and before he was taken to the probate court.

7. Testimony that the crime was committed at an abandoned house where crack cocaine had been used was improperly admitted. However, given the overwhelming evidence against Rush, the error was harmless beyond a reasonable doubt and does not require reversal.

8. The trial court's findings regarding the factors to be considered in determining whether to sentence Rush as an adult, MCL 769.1(3); MSA 28.1072(3), were not clearly erroneous. The court did not rely solely on the seriousness of the offense in making its determination and did not err in deciding to sentence him as an adult.

Spearman's conviction of aiding and abetting second-degree murder is vacated and the case is remanded for reconsideration. Rush's second-degree murder and assault convictions are affirmed, and his felony-firearm conviction is reversed.

1. HOMICIDE — SECOND-DEGREE MURDER — AIDING AND ABETTING — MALICE.

The malice required to support a conviction of aiding and abetting second-degree murder may not be inferred solely from an intent to commit another felony but may be inferred from facts and circumstances surrounding the commission of the felony; an aider and abettor who participates in a crime with knowledge of the principal's intent to kill or cause great bodily harm

acts with wanton and wilful disregard of the possibility that death or great bodily harm will result from the crime sufficient to support a finding of malice (MCL 750.317; MSA 28.549).

2. HOMICIDE — SECOND-DEGREE MURDER — CORPUS DELICTI — MALICE — DEFENDANT'S CONFESSION.

The corpus delicti rule does not require that the element of malice necessary for a conviction of second-degree murder be established independently of the defendant's confession; the only things that must be proven independently of the defendant's confession are a death and that the death was the result of some criminal agency (MCL 750.317; MSA 28.549).

3. CRIMINAL LAW — EVIDENCE — JOINT TRIALS — NONTESTIFYING CODEFENDANT'S CONFESSION.

In a joint trial, a nontestifying codefedant's confession is inadmissible against the other defendant.

4. CRIMINAL LAW — CIRCUIT COURTS — JURISDICTION — AUTOMATIC WAIVER — JUVENILES.

Circuit and recorder's court jurisdiction to try a juvenile defendant for certain enumerated life felonies without conducting a waiver hearing does not include ancillary jurisdiction to try the juvenile for nonenumerated nonlife felonies (MCL 600.606; MSA 27A.606).

5. CRIMINAL LAW — JUVENILES — CIRCUIT COURTS — PROBATE COURTS — AUTOMATIC WAIVER OF JURISDICTION.

A juvenile under seventeen years of age who is arrested need not immediately be taken before the juvenile division of the probate court where the prosecutor charges the juvenile as an adult in circuit court under the automatic waiver rules (MCL 600.606, 764.27; MSA 27A.606, 28.886).

6. CRIMINAL LAW — SENTENCES — JUVENILES — APPEAL AND ERROR.

The decision by a circuit court to sentence as an adult a juvenile charged as an adult under the automatic waiver rules will be affirmed where the court's findings, based on substantial evidence and thorough investigation, show either that the juvenile is not amenable to treatment or that, despite potential for treatment, the nature of the difficulty is likely to render the juvenile dangerous to the public if released at age nineteen or twenty-one or to disrupt the rehabilitation of other children; the trial court's findings of fact regarding the factors to be considered in making the determination are reviewed for clear error (MCR 6.931[E][3]; MCL 600.606, 769.1[3]; MSA 27A.606, 28.1072[3]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, *Ernest O. Hornung,* Assistant Prosecuting Attorney, in Docket No. 130745, and *Maria A. Petito,* Assistant Prosecuting Attorney, in Docket No. 131895.

*John B. Payne, Jr.,* and Donnie A. Spearman, in propria persona, for Donnie A. Spearman.

*Ted C. Farmer,* for Dedrea Rush.

Before: FITZGERALD, P.J., and HOOD and J. C. KINGSLEY,* JJ.

PER CURIAM. The charges in this case arose from the shooting death of a pizza delivery man. Defendants Rush and Spearman, both of whom were minors at the time of the crime, were tried together in the circuit court under the automatic waiver law, MCL 600.606; MSA 27A.606. Rush was tried by a jury and Spearman by the court. Rush was charged with first-degree (felony) murder, MCL 750.316; MSA 28.548, possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and assault with intent to rob while armed, MCL 750.89; MSA 28.284. Spearman was charged with first-degree (felony) murder.

Spearman was convicted of second-degree murder, MCL 750.317; MSA 28.549, and sentenced as an adult to eighteen to forty years' imprisonment. Rush was convicted of second-degree murder, possession of a firearm during the commission of a felony, and assault with intent to rob while armed. He was sentenced as an adult to the mandatory two years' imprisonment for the felony-firearm

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

conviction and to concurrent terms of twenty to forty years' imprisonment for each of the other two convictions. Both defendants appeal as of right. We vacate Spearman's conviction and remand for reconsideration and affirm in part and reverse in part with regard to Rush.

Defendants, and perhaps others, planned to rob a pizza delivery person by ordering a pizza delivered to a vacant home and waiting for the delivery person.[1] Rush hid behind a bush with a sawed-off shotgun. When the delivery man arrived, Rush jumped out from behind the bush and shot him. All the participants fled; no money was taken.

We will deal first with the arguments raised by Spearman.

Spearman first argues that the trial court impermissibly used the intent to rob to satisfy the mens rea requirement of second-degree murder. We disagree.

Second-degree murder is established where the defendant causes a death with malice and without provocation. *People v Harris,* 190 Mich App 652, 659; 476 NW2d 767 (1991). Malice is defined as the intent to kill or to do great bodily harm, or as the wilful and wanton disregard of the likelihood that the natural tendency of the defendant's actions will be to cause death or great bodily harm. *People v Kelly,* 423 Mich 261, 273; 378 NW2d 365 (1985); *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980). Malice may not be inferred solely from the intent to commit another felony but it may be inferred from the facts and circumstances surrounding the commission of that felony. *Kelly,* 423 Mich 273; *Aaron,* 409 Mich 727-730.

[1] There was conflicting testimony regarding whether three other men were involved in the planning and commission of the crime. Two of them testified against Rush and Spearman. Apparently, none of the three was charged.

Where, as in this case, a defendant is being held vicariously liable for a killing committed by another, he must be found to have had the same mens rea required to convict the principal, that is, malice as defined above. *Kelly,* 423 Mich 278; *Aaron,* 409 Mich 731. However, "if the aider and abettor participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he is acting with 'wanton and willful disregard' sufficient to support a finding of malice." *Kelly,* 423 Mich 278-279. An aider and abettor may also be held liable "on agency principles" where he acts "intentionally or recklessly in pursuit of a common plan." *Aaron,* 409 Mich 731.

In this case, a person who was present at the home where the crime was planned testified that Spearman said that they were going to rob the pizza man. This witness also testified that he saw Rush with a bulge under his clothes, which the witness concluded was a weapon that he believed that Rush had purchased a few days before the murder. Another person who was present when the crime was planned testified that Spearman asked him to get off the phone so that he could order a pizza. The witness did not remain in the room while Spearman made the call.

Spearman's statement to the police was admitted into evidence outside the presence of Rush's jury. In that statement, Spearman indicated that the robbery was Rush's idea and that the owner of the home where it was planned—whose phone number was given to the pizza parlor to confirm the order—was the one who called for the pizza. Spearman nevertheless indicated that he was aware that, when they arrived at the vacant home to wait for the pizza, Rush hid in the bushes with a sawed-off shotgun. The shotgun had been purchased at a K mart store by or for Rush only two

days before the crime and had been sawed off in the basement of the home where the robbery was planned on the day before the crime. Spearman characterized his own role in the event as that of a "lookout."

The evidence on the record, especially Spearman's confession, was sufficient to support a finding beyond a reasonable doubt that he acted with wilful and wanton disregard of the possibility that death or great bodily harm would result from a planned robbery that involved someone hiding behind bushes with a sawed-off shotgun.

Spearman, relying on *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), argues that the elements of the crime, specifically malice, must be established independently of his confession. We disagree. According to two recent well-reasoned interpretations of the corpus delicti rule, the only things that must be proven independently of a defendant's confession are the fact of death and the fact that death was the result of some criminal agency. *People v Williams,* 422 Mich 381, 391-392; 373 NW2d 567 (1985); *People v Hughey,* 186 Mich App 585, 587-589; 464 NW2d 914 (1990). Those elements were established in this case by the stipulated testimony of the medical examiner. It was therefore proper to rely on Spearman's confession to find that he acted with malice.

Spearman next argues that the trial court erred in relying on Rush's confession to determine Spearman's role in the robbery. The trial court found that, in addition to being a lookout, Spearman "was on the porch . . . acting as the person who was to receive the pizza." Spearman correctly points out that the only support for this finding was Rush's confession. According to Spearman's own statement—which was the only other evidence placing him at the scene—he acted only as a

lookout and was standing two or three houses away from the appointed delivery site at the time of the shooting.

Spearman correctly points out that a nontestifying codefendant's confession is inadmissible against a defendant. See *People v Banks,* 438 Mich 408, 420-421; 475 NW2d 769 (1991); *People v Watkins,* 438 Mich 627, 646, 651-652; 475 NW2d 727 (1991). In this case, however, the confession was admitted only against Rush, who was being tried by a jury. The court's use of the confession against Spearman was therefore improper. The issue thus is whether this improper use by the trial court was harmless and, if it was not, what remedy is appropriate.

To find a defendant guilty on an aiding and abetting theory, the people must show that (1) a crime was committed either by the defendant or by another, (2) the defendant performed acts or gave encouragement that aided or assisted in the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid or encouragement. *People v Rockwell,* 188 Mich App 405, 411; 470 NW2d 673 (1991). Mere presence at the scene, even with knowledge, is insufficient. *Id.,* at 412; *People v Anderson,* 166 Mich App 455, 475; 421 NW2d 200 (1988). However, "other factors such as a close association between the defendant and the principal actor, his participation in planning or executing the crime, and evidence of flight after the crime could be considered in determining whether there was sufficient evidence that he acted in concert with the principal." *Id.; People v Trudeau,* 51 Mich App 766, 772; 216 NW2d 450 (1974). Aiding and abetting "describes all forms of assistance . . . and comprehends all words or

deeds which may support, encourage or incite the commission of a crime." *Rockwell,* 188 Mich App 411-412.

In this case, there was evidence from which the court could properly find that Spearman participated in planning the robbery, that he ordered the pizza, that he was a lookout, and that he fled the scene of the crime. However, the evidence was not so overwhelming that we can say that the error was harmless beyond a reasonable doubt. Whether the trial court would have found Spearman guilty of second-degree murder on an aiding and abetting theory had it not improperly relied on Rush's confession is a question that should be answered by the trial court in the first instance. The trial court can make that determination on the basis of the evidence already submitted at trial but excluding Rush's confession. Spearman's conviction is hereby vacated, and the case is remanded for reconsideration in light of the evidence properly admitted against Spearman. See *People v Simon,* 189 Mich App 565, 567-569; 473 NW2d 785 (1991).

Spearman next argues that his sentence violates the principle of proportionality set out in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). This argument is without merit. The sentence imposed on Spearman was within the minimum sentence range recommended by the guidelines and is therefore presumptively proportional. *People v Broden,* 428 Mich 343, 354-355; 408 NW2d 789 (1987); *People v Dukes,* 189 Mich App 262, 266; 471 NW2d 651 (1991). Spearman has not met the heavy burden of overcoming this presumption.

Spearman lastly contends that the trial court violated his right to procedural due process by not giving him advance notice of its intention to depart from the guidelines and an opportunity to be heard on the subject. Because his sentence was not

in fact a departure from the minimum range recommended by the guidelines, we need not consider this argument further.

We now turn to the arguments raised by Rush.

Initially, although not raised by Rush, we are constrained by Administrative Order No. 1990-6, 436 Mich lxxxiv, to hold that the trial court did not have jurisdiction to try him on the felony-firearm charge because it did not conduct a pretrial waiver hearing with regard to that charge. *People v Deans,* 192 Mich App 327, 330-331; 480 NW2d 334 (1991). The automatic waiver statute that grants a court jurisdiction to try a juvenile defendant for certain enumerated life felonies without conducting a waiver hearing does not grant the court ancillary jurisdiction to also try the defendant for nonenumerated nonlife felonies such as felony-firearm. *Id.* Because this is a jurisdictional defect, we must reverse Rush's felony-firearm conviction and the mandatory two-year sentence even in the absence of an objection.

Rush first argues that his signed confession was involuntary and inadmissible because he was held for about two hours after being arrested instead of being taken to the juvenile division of the probate court immediately as required by MCL 764.27; MSA 28.886. Rush confessed during this two-hour delay in the presence of his mother, sister, and brother. All present were informed of Rush's *Miranda* rights.[2] It is undisputed that no one asked for an attorney or requested an end to the questioning.

It is true that, "[e]xcept as otherwise provided in section 606 of the revised judicature act . . . , if a child under 17 years of age is arrested . . . the child shall be taken immediately before the juve-

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

nile division of the probate court." MCL 764.27; MSA 28.886. This Court has recently resolved a conflict regarding the effect of violating this provision for the purpose of obtaining a confession. See *People v Good,* 186 Mich App 180, 186-190; 463 NW2d 213 (1990) (adopting a totality of the circumstances test for determining the voluntariness and admissibility of the resulting confession). Moreover, where the evidence against the defendant is overwhelming, the error may be harmless. *People v Strunk,* 184 Mich App 310, 320-322; 457 NW2d 149 (1990).

We believe, however, that the § 27 requirement does not apply where, as in this case, the prosecutor chooses to charge the defendant under the automatic waiver rules instead of filing a petition with the probate court. See *People v Brooks,* 184 Mich App 793; 459 NW2d 313 (1990); see also *Good,* 186 Mich App 185, n 2 (dicta). In *Brooks,* this Court interpreted § 606 of the Revised Judicature Act, MCL 600.606; MSA 27A.606, as exempting from the probate court's jurisdiction those minors whom the prosecutor chooses to charge as adults under the automatic waiver rules. *Brooks,* 184 Mich App 797-798. We agree with *Brooks* that the procedural rule of § 27 applies only where the juvenile is under the probate court's jurisdiction.

As noted by the *Brooks* panel, § 27 specifically requires minors to be taken before the probate court immediately "[e]xcept as otherwise provided in section 606." MCL 764.27; MSA 28.886. Section 606 grants circuit and recorder's courts jurisdiction to try minors between the ages of fifteen and seventeen who have been charged as adults with certain enumerated life felonies. MCL 600.606; MSA 27A.606. Probate courts have exclusive jurisdiction with regard to such juveniles *only* if the prosecutor chooses to proceed against them as

minors by filing a petition with the probate court. MCL 712A.2(a)(1); MSA 27.3178(598.2)(a)(1); see also MCL 764.1f; MSA 28.860(6) (allowing prosecutor to treat minors as adults by authorizing the filing of a complaint and warrant instead of the filing of a petition).

As noted by the panel in *Good,* a juvenile's appearance before the probate court under § 27 is closely analogous to an adult's arraignment. *Good,* 186 Mich App 186-188. On the other hand, a juvenile charged as an adult under the automatic waiver rules is specifically granted the right to a speedy arraignment. See MCR 6.907(A). He is also afforded other adult procedural safeguards such as the right to bail under certain circumstances and the right to a speedy trial. See MCR 6.909(A) and (C).

We agree with the *Brooks* panel that the fact that other procedural safeguards are provided indicates that § 27 was not meant to apply in automatic waiver cases. Therefore, given that there is no allegation that Rush's confession was otherwise involuntary, we find that the trial court did not commit clear error in refusing to suppress it.

Rush next complains that testimony that the crime was committed at an abandoned house where crack cocaine had been used was inadmissible similar-acts evidence. We fail to see how this testimony constitutes similar-acts evidence where there was absolutely no evidence that the crime was in any way drug-related. We believe that the proper analysis is whether the evidence was more prejudicial than probative under MRE 403.

MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," confusion, and the like. However, evidentiary errors are not grounds for reversal unless

a substantial right was affected. Additionally, because Rush did not object at trial, the error, if any, will not be grounds for reversal absent manifest injustice.

In this case, evidence that the crime was committed at an abandoned crack house did not tend to make the existence of any fact at issue more or less probable than it would have been without such evidence. Therefore, its probative value was nil. See MRE 401. On the other hand, the prejudicial effect of the evidence was potentially high. The evidence was therefore clearly inadmissible under the balancing test of MRE 403. However, given the overwhelming evidence against Rush, the error was harmless beyond a reasonable doubt and does not require reversal.

Finally, Rush contends that the trial court erred in sentencing him as an adult instead of as a juvenile. In deciding whether to sentence a juvenile defendant as an adult in automatic waiver cases, the court "shall" consider the following factors, "giving each weight as appropriate": (a) the defendant's prior record, character, maturity, and pattern of living, (b) the seriousness and circumstances of the offense, (c) whether the crime is part of a repetitive pattern that shows either that the defendant is not amenable to treatment or that he will disrupt the treatment of others, (d) whether, despite the defendant's potential for rehabilitation, the nature of his behavior is likely to render him dangerous when released at age twenty-one, (e) whether the defendant is more likely to be rehabilitated at adult or juvenile facilities, and (f) the best interests of the public and the protection of public security. MCL 769.1(3); MSA 28.1072(3); see also MCR 6.931(E)(3).

We have found no published cases establishing a

standard of review for posttrial dispositional hearings in automatic waiver cases. However, in the usual pretrial waiver case, a probate court's decision to waive jurisdiction will be affirmed "whenever that court's findings, based on substantial evidence and thorough investigation, show either that the juvenile is not amenable to treatment or that, despite his potential for treatment, the nature of his difficulty is likely to render him dangerous to the public, if released at age nineteen or twenty-one, or to disrupt the rehabilitation of other children." *People v Fowler,* 193 Mich App 358, 363; 483 NW2d 626 (1992); see also *People v Dunbar,* 423 Mich 380, 387; 377 NW2d 262 (1985); *People v Schumacher,* 75 Mich App 505, 512; 256 NW2d 39 (1977). Because the criteria to be considered under the two statutes are identical, we hold that the same standard of review applies to postconviction dispositional hearings in automatic waiver cases. Compare MCL 769.1(3); MSA 28.1072(3) with MCL 712A.4(4); MSA 27.3178(598.4)(4).

Both experts who testified at Rush's dispositional hearing recommended that he be sentenced as a juvenile. The trial court, however, rejected their recommendations. The court analyzed each statutory factor and found that Rush had no prior record, that he was physically but not mentally mature, and that there was nothing "terribly negative" in his pattern of living. The court found that the offense committed and the circumstances surrounding it were very serious and militated toward treating Rush as an adult. The court further found that, although Rush was amenable to treatment in a juvenile setting and would not be disruptive, the period of incarceration available if he were treated as a juvenile would be "inadequate to be an appropriate sentence" and that the

best interests of Rush and the public would therefore be served by sentencing him as an adult.

Rush argues that the trial court erred in relying solely on the seriousness of the offense. He points out that, although not mentioned by the court, it is undisputed that the crime was not part of a repetitive pattern. He also asserts that the trial court did not find that he would be dangerous if released at age twenty-one or that his prospects of rehabilitation would be better in the adult system.

As noted by Rush, there are cases decided in the context of pretrial waiver hearings that hold that the court may not rely solely on the seriousness of the offense to justify sentencing a juvenile defendant as an adult. See *Dunbar,* 423 Mich 393; *Schumacher,* 75 Mich App 512. The prosecutor counters that, since those cases were decided, both statutes were amended to allow the court to consider the enumerated factors, "giving each weight as appropriate to the circumstances." The prosecutor argues that this language allows the court to give preemptive weight to any one factor. See MCL 769.1(3); MSA 28.1072(3); see also MCL 712A.4(4); MSA 27.3178(598.4)(4). We are not persuaded by the prosecutor's argument. However, our review of the record convinces us that the trial court did not rely solely on the seriousness of the offense in deciding to sentence Rush as an adult and, therefore, we find it unnecessary to resolve this dispute.

We review a trial court's findings of fact regarding the factors enumerated in the sentencing statute, MCL 769.1(3); MSA 28.1072(3), under the clearly erroneous standard. *People v Passeno,* 195 Mich App 91; 489 NW2d 152 (1992). At the dispositional hearing, the trial court indicated that, after considering all the evidence, it was convinced that the best interests of both the public and Rush

warranted sentencing him as an adult. At sentencing, the trial court further indicated that it felt that a significant sentence was necessary to deter Rush from being involved in any crimes like this in the future. It is therefore clear to us that the trial court considered factors other than the seriousness of the offense. Thus, after carefully reviewing the entire record, we are not left with a definite and firm conviction that a mistake has been made, and therefore we affirm the trial court's decision to sentence Rush as an adult. *People v Gistover,* 189 Mich App 44, 46; 472 NW2d 27 (1991).

In conclusion, we vacate Spearman's conviction and remand the case for reconsideration on the existing record. We further hold that Rush's felony-firearm conviction is reversed for lack of jurisdiction. His assault and murder convictions and the resulting sentences are affirmed.

We do not retain jurisdiction.